SCHOTT, Judge.
This appeal is from a judgment denying the father's motion for a change of custody of two children. The issue is whether the trial judge abused his discretion in refusing to change the custody despite evidence of -the mother’s misconduct in carrying on an affair with an individual with a criminal record for possession of narcotics.
The father obtained a judgment of separation against his wife for abandonment on May 29, 1980, and the custody of the two children was awarded to the mother. On April 21, 1981, the father filed a motion to change the custody of the children, two boys then six and two years of age. The evidence showed that the mother had carried on an adulterous affair with one Glynn Virga; he had stayed overnight in her home with the children present there on a number of occasions; and he had been twice convicted of drug related charges and had the reputation with the local police of being a drug user and seller.
The mother testified that before the rule to change custody was filed she had decided to terminate her relationship with Virga. A number of letters and personal reflections, written by her, between October, 1980, and May, 1981, revealed that she had professed a deep love for Virga but ultimately decided against a permanent relationship because of his ties to his previous wife and his use of dope. She denied that Virga ever used or had drugs in the presence of her children and no evidence was produced to the contrary. The evidence is uncontradicted that she was a good mother to her children, loving them and caring for them at all times. Her home environment was excellent, consisting of a three bedroom, two bath house which she owned.
The trial judge had requested a home study of the parties and a recommendation as to which parent should have custody in the best interest of the children. The probation officer found that the mother had provided a good home for the children but questioned her fitness because of her relationship with Virga, whom he characterized as a career criminal with two convictions for dealing in drugs and with a current arrest in May, 1981, for possession of marijuana with intent to distribute and posses *713 sion of phencyclidine. This probation officer concluded his recommendations with the following:
“Therefore if the Court finds that Jean is not telling the truth about giving up her lover Glynn Virga, it is my opinion the children should be removed from her custody and given to the father with very limited visitation rights to the mother. On the other hand if the Court finds that Jean has grown up and realizes her mistakes and is telling the truth about not having anything more to do with Glynn Virga, or any person of his reputation and the Court finds the children can remain in the custody of the mother, it is my recommendation that she be placed on supervised probation or her activities be monitored for at least one year.
My personal opinion is that Jean is still in love with Glynn and will go back to him when this custody problem is over.”
In his remarks dictated into the record at the conclusion of the hearing, the trial court indicated that he believed the mother had given up her relationship with Virga and if she did fall back into a pattern of misconduct with him he would take the children away from her.
This court is governed by the principles announced by the Supreme Court in such cases as Stephenson v. Stephenson, 404 So.2d 963 (La.1981) and Cleeton v. Cleeton, 383 So.2d 1231 (La.1980). In both the trial courts had awarded custody to mothers despite evidence that they had carried on adulterous affairs, the Courts of Appeal reversed these judgments, and the Supreme Court reversed the Courts of Appeal. In both eases the court re-stated that on appellate review the determination of the trial court in a child custody case is entitled to great weight and will not be disturbed unless there is a clear showing of abuse of discretion. In Stephenson the court observed that no evidence had been presented to indicate that the mother’s relationship with her paramour had a detrimental effect on her young daughter. In Cleeton the court would not conclude that evidence that the paramour occasionally stayed overnight with the mother warranted a deprivation of the mother’s custody considering that she took good care of the children otherwise. In the latter case, the court expressed an unwillingness to use custody change as an instrument to punish the mother for past misconduct or as a “tool to regulate human behavior.”
In the instant case, the father relies heavily on Hilderbrand v. Hilderbrand, 391 So.2d 577 (La.App. 4th Cir. 1980) writs refused February 6, 1981, wherein this court reversed a custody determination on the basis of the mother’s misconduct. However, that case is distinguishable on its facts. The court found that the mother was maintaining an . open adulterous relationship over a long period of time and noted that while there was no evidence of adultery committed in the presence of the children, evidence that the daughter served the mother and her paramour breakfast in bed and that all the children joined the two in bed to read the newspaper, demonstrated conduct not only contrary to moral standards, even under today’s liberal concepts, but also clearly detrimental and damaging to the three young children. In contrast, the evidence in the instant case is not strong enough under the cited Supreme Court cases to authorize us to substitute our own judgment for the trial court’s and to conclude that its judgment awarding custody to the mother constituted an abuse of discretion.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.